Good morning and welcome to the Ninth Circuit. I'm Judge Nelson and it's a pleasure to be joined by my colleagues Judge Fletcher and Judge Wallach who is visiting from the Federal Circuit and we're always grateful to our visiting judge colleagues who help us manage a pretty heavy caseload on the Ninth Circuit. We also want to welcome counsel this morning and we're grateful to our court staff who who keep keep the trains running on time. We ask that during arguments you please just pay attention to your time, wrap up as your time is concluding, let us know if you want to reserve some time and and and then watch the clock. But we're ready to proceed to our calendar this morning. We have two cases set for argument. The first one is Cervantes Mejia v. Bondi case number 23-1735. Thank you. Good morning. Christopher Stender on behalf of the petitioner Mr. Cervantes. I'd like to reserve two minutes of my time for rebuttal. I think the primary issue before the court is what to do with the age of the oldest child Yesenia who was under 21 years of age and met the definition of child under the Immigration Nationality Act but turned 21 years old after the case was pending before the Board of Immigration Appeals. I think that's what the court should focus its attention on and I think that's kind of the seminal issue in the case before it. I've been looking at the case law, at the regulations, and at just simple reason. I think it compels the court to fix or lock in the qualifying relative's age at the definition of a child under 21 at the time the application is considered by the immigration. So your point is we don't have precedent that analyzes this particular issue yet. Well that's very interesting. I would agree there's no precedent on that and I think that's why the court I assume has set this for oral argument. The BIA has made several statements regarding good moral character or continuing physical presence kind of being locked in at different points. The Ninth Circuit in Garcia. But generally, I mean you agree that the policy right now is, I thought the policy was pretty well established that you had to qualify up until the BIA heard your case. The continuing application argument, yeah it's it's very interesting on that note because the Board of Immigration Appeals cannot be a primary finder of fact. They can't reconsider what was established in front of the immigration judge, who's the trial court judge in this case. But they can look at the calendar. I'm sorry? But they can look at the calendar. Yes, of course they can. But what you have in a hardship calculation is a weighing of the hardship based on the facts that were established in front of the immigration judge. So the regulations are very clear that the Board of Immigration Appeals cannot, that their function is to review an established record. That the BIA has authority to review a hardship as when presented by or before the immigration judge. And what's happening in this type of case where there's a change in the qualifying relatives, in this case were four children and a wife who are qualifying relatives, somehow the BIA then is forced to re-evaluate what the hardship was considered by the immigration judge. And it's very difficult to say what the BIA does in that sort of circumstance. Does it cut out a fifth of the hardship? Does it cut out a quarter of the hardship? How does it get to that point where it says, yes, here's the record, but we're going to go back and look at it. And since that person no longer qualifies, we're going to carve out this portion, re-weigh it, which is outside their remit under the regulations in the case law. What's the alternative? I mean, at the time, at the alternative, she's 21. She's aged out. The BIA is hearing it. There wouldn't be a re-weighing if she's 21. So if you send it back, the IJ at that point wouldn't even be able to re-weigh her as a hardship, right? So I guess I'm sort of confused at what the ultimate import of your argument is. Well, I think you're bringing up something very important because the problem in this type of case is if we reverse the facts and the judge had granted 42B, it gives the incentive for the government to appeal it knowing that qualifying relative is going to age out. There is a bit of a conundrum here because, obviously, children continue to age throughout the process. These cases drag on for years. Sometimes it's to the benefit of the non-citizen. Obviously, there are cases and the BIA makes that point. But yet there's also this perverse incentive that if the government drags it out, and I'm not saying they did in this case, but there are certainly cases where that could be an incentive for the government. And that changes the whole calculus of the case. So your basic position is we'll leave our current precedent in place, which says that if there's been aging out before it gets to the IJ's decision, okay, well, the person's aged out. But what you want is, I think would be sufficient for you to win this case on this point, would be the record with respect to age is fixed at the time of the IJ's decision. And that's the end of it for that purpose. That's all you need for your case. Yes, that's it. So we don't need to revisit the factual decision of our MHIA case. We just need to limit it to the facts of that case. That's the argument. That's 100% the argument. And I think the case law does provide that. I think the regulations are set up for that purpose also. Again, that the BIA is an independent body. They can't reestablish or reweigh the record. And I think, again, as I've argued, logic. It's just the immigration judge is the finder of fact. The record is established for the immigration judge. That's what all the case law suggests. And I think that's what the court should be compelled to find in this case. It feels a little artificial, though, to freeze a fact. I understand you with like factual findings, but there's not a factual... I mean, this is a I think that's the policy, and that's what I want to hear from the government on. But I thought that there was a government policy that said you have to qualify all the way up until. And so if it were a factual finding, I think your position would be more well taken. But your age isn't... it's not arbitrary. We know what somebody's age is. In the same way that I suppose if there were a citizenship requirement and they had established that they'd moved somewhere else, I suppose that would change the facts. I think the point is not that simple. It is a qualification argument, but yet the immigration judge has calculated that hardship to that qualifying relative at the time before the immigration judge, under 21, a qualifying relative. And it changes while it's on appeal in front of the Board of Immigration Appeals. It really puts the Board of Immigration Appeals in a completely untenable position. How does it make a hardship finding by subtracting that qualifying relative that the immigration judge considered and weighed? Now, this case, it didn't revolve completely around that because it was denied, and we made other due process arguments regarding... But that seems like that's a different argument. Because you're right, I suppose if the total package changed and it would have some impact, then you might have to actually remand it. But that's not at issue here. Well, with all due respect, I think it is an issue because the judge... The package did change. I mean, as the I.J. looked at it, she was under 21. And the I.J. concluded, well, even with respect to hardship for her, including that, your client did not prevail. That's true. So if we were to agree with you, why is the I.J. wrong? That is to say, considering the hardship to Ecenia. Right. We made arguments that the I.J. did not consider the hardship because he made incorrect factual findings. For example, she was on certain medications for her mental health. He said, well, she's off them now. But it was specifically because she was pregnant and couldn't take them at the time. And there was evidence in the record, I believe, that she said she wanted to go back on them. Yeah. And there was a previous suicide attempt. Yes. I mean, so she's a troubled person. Correct. Correct. And that. Yes. So factually, this case is interesting because the I.J. denied it. But yet I think what's clear about this case, and I think it was before the court, is because this creates an issue where a qualifying relative falls out, then the BIA has to reevaluate that hardship again. And I think the case law and the regulations don't support the Board of Immigration Appeals in doing that. Thank you. And I think I'll reserve the rest of my time unless there's a question. Yeah. Thank you. Thank you very much. Good morning, Your Honor. Jonathan Needle, Department of Justice, on behalf of the respondents. May it please the court. We submit that the petitioner misconstrues the board decisions as well as this court's decision in Mendez-Garcia in asserting that the statutory requirements need only be met by the time the I.J. adjudicates the cancellation application. Can I ask about that? I mean, could we just rely on Mendez-Garcia and say that's the end of this? I do feel like there's. It doesn't answer this exact question, right? I mean, the import of it may lead you to the same conclusion, but I don't know that we could just say. Petitioner loses C. Mendoza or Mendez-Garcia. Right. The question is, is there anything to write? And if so, what? I'm sorry, Your Honor. Is there anything to write here? And if so, what does the government think it should be? Well, Mendez-Garcia does establish it. It is based on a distinct factual scenario where the immigration judge, where the qualifying relative aged out before the adjudication by the immigration judge. So there's nothing in that decision that bars the agency from doing what it did in this case, where the age out occurred on appeal to the board. But neither is there anything in that decision that absolutely supports what the BIA did. Well, that's correct, but it does discuss the relevant agency precedent in terms of matter of a procedural matter of Batista Gomez. Maybe you can help us out why that precedent dictates the result the government's seeking here. Well, those decisions clearly established that an application for cancellation is a continuing one and that it continues until there's a final administrative decision. So what do you do with the argument? I think a genuine practical argument with, you know, there are a lot of delays. And over the time I've been a judge, which is quite a long time, there have been periods in which the time between the decision by the IJ and the decision by the BIA had been years, like three years, four years. When I first started, they were five years. I mean, that's a really awkward business if you've got, say, a 17-year-old kid with enormous problems at the time of the IJ. Let's say the IJ does grant relief based upon the hardship to that 17-year-old kid. The BIA doesn't get to it for another four years. By the time we get there, the kid is aged out and you're saying that the government wins? In that situation, that's what the agency's interpretation of its And you're willing to stand behind that answer? I mean, is that the right answer? Is that the answer we should come to? Because the BIA is so backed up, it can't get to the appeal from the IJ's decision for four to five years. Well, there's no doubt that there are delays in adjudications before the IJ and before the board, but there are... Yeah, and I'm only talking now about IJ, about delays between the IJ and the BIA. Sure, but there are also mechanisms by which a litigant can seek expedited resolution. Yeah, good luck with that. Well, that was not attempted in this case, either before the IJ or the board, even though it was apparent or it should have been apparent to the petitioner at the outset of the case that there was a potential age-out issue. The age-out could have occurred before the IJ's adjudication. It could have occurred while on appeal to the board. Yeah. Are there any Court of Appeal decisions that address this precise question? I mean, ours obviously is ageing out before you get to the IJ decision. Are there any that present this question? There are. I believe one of them is referenced in our answering brief, the Baltazar-Felipe case from the 11th aged out while the case was on appeal to the board. And interestingly, Baltazar-Felipe also discussed the fact-finding and rejected the fact-finding argument that the petitioner is making, where it found that it wasn't improper for the board to take notice of the fact that the petitioner's qualifying relative had aged out on appeal, even though there was no factual record specifically related to that point before the IJ. It found that the court can simply, that the date of birth, the age of the qualifying relative is clearly established by the record and the court can simply take notice of the date of its decision. And what year, I was looking, what year was that case decided? I believe it's 2023. Oh, so that's recent. Did it rely on the board's regulations or decisions? It actually interpreted the, this was sort of a statutory holding where the court interpreted 1229B. Well, that's what I was wondering because, I mean, the other interesting thing, and query whether we even need to get into it here, but Mendez-Garcia sort of relies on some of the board's prior precedent. The Supreme Court has now come down with Loeb or Bright that says, you know, we don't give as much deference to agencies. So are we, you know, if we were to extend Mendez-Garcia, and I think we need to think through that, would we do it based on the board's decisions or would we need to do the statutory analysis? And it sounds like what you're saying is the Eleventh Circuit went and did the statutory analysis. That's correct, but there's no argument from the petitioner that what the board did was outside its statutory authority. There was no attempt to. No, it's not, I'm not, I think those are slightly different questions. It's not whether it's outside their statutory authority, but whether, I mean, in the olden days, I guess we would just kind of defer to the board's decisions, and now we sort of have a different command from the Supreme Court, which is no, they're not due that deference. We need to just look to the statutory interpretation, but I take it your argument is it's the same. Even if there's ambiguity in the statute, and the board had the authority to take this position, the best interpretation is consistent with the government's position here. That's correct, Your Honor. Loeb or Bright does not automatically overrule every case. No, I totally understood. That's not my point. My point, though, is I think I'm coming to the conclusion that we can't just cite Mendez-Garcia and be done with this case, and if that's the case, then it's not about overruling Mendez-Garcia, but whether we extend it, and if we're going to extend it, on what basis do we do that? Well, the extension would be based on the board's own precedent. And you dropped a footnote in your brief saying that Loeb or Bright leaves this one alone. That is to say, does not interfere with previous adjudications by the agency, and I think that's right. That's correct. So Mendez-Garcia remains presidential. I think that's Loeb or Bright, as you appropriately cited in your footnote, sure. Correct. But this is a case where the court's own reference to the board's decisions in matter of Isidro, matter of Batista-Gomez, established that the application continues until there's a final administrative order. Those are the clear holdings that the agency has made with respect to this issue, and there is simply no basis in precedent or in any other provision that the petitioner cites that the record is firmly closed at the time of the adjudication. You know, it continues to bother me, however, that this is such a moving target, that if there is delay in the process, all of a sudden hardship that existed disappears if the BIA is slow. I mean, I understand you've got cases you're talking about, but I'm now asking, sort of backing up from that, is there a good reason for this? It's, I think looking at the statute, there... I mean, I should say policy reason. I'm now kind of moving away from case law. I mean, what are we talking about in terms of practical application of this? Well, I think that Congress has to draw the line somewhere. I'm not sure Congress has. I think maybe the BIA has. Well, as far as the definition of a child, that's what the statute refers to. Well, I understand definition of the child, but the question is when? Could the government move for a reconsideration of an established case after a child turns 21? Well, I think in that scenario, there would have to be a grant of cancellation that the government appeals. I think what the was arguing is that the government might engage in a bad faith decision to appeal in order for... Following on that question, how does this work in practice? So, if let's say the IJ had reached a different conclusion, it had canceled removal. I mean, I guess you could have appealed it, but let's say the BIA says, okay, it's canceled the removal. The child is 19 at the time of cancellation or removal. Two years later, three years later, can you come back in and say, we need to remove you again, or is that cancellation of removal good forever? I think... I guess, is this a temporary cancellation or is this an unqualified cancellation once they get it for hardship of a minor child? Well, I think, you know, once there's a final administrative decision, then there are certain procedural hurdles that need to be cleared in order for the agency to reopen the case. You know, the regulations do give Department of Homeland Security the opportunity to file a motion to reopen in cases where there is already a final administrative order, but there are certain... But building on Judge Nelson's question, let's say, not this case, but let's say we have a case where the IJ does grant withholding based upon hardship to a child who at the time of the IJ's decision is 19 or 20, and the government files an appeal, kind of hoping, well, by the time it gets to the BIA, the hardship that the judge relied on is no longer there. I mean, it just doesn't seem fair to me. Right, but it can go both ways. The fact that it's a continuing application, there could be facts that arise after the IJ's adjudication that work to the litigant's favor. Do you have cases where, in fact, we get new hardship determination based on new evidence that comes in after the IJ's decision? I don't think there are such. Do you mean if there is new evidence supporting hardship? Yes, exactly. I believe there is one case, I can't think of the name right now, about Partap, which is a Ninth Circuit case, 603 Federal 3rd 1173, where additional evidence of hardship arose after the IJ's adjudication, and it was found that the board had the authority to entertain a motion to remand based on that additional... To remand, but not to itself decide? Correct, because it would implicate, it would require additional fact-finding. Right. Whereas in this case, the age-out is... Well, it's fact-finding. It may be that the facts are not disputed, but they're relying on facts that are different from the facts that were in the IJ, so it's fact-finding in that sense. I think we would respectfully disagree that it's fact-finding because there is... Well, it's a fact and they find it, but why is it not fact-finding? It's not disputed, I understand that. Well, looking at page 60 of the administrative record, which is page 6 of the IJ's oral decision, the IJ says that Yesenia will turn 21 on February 13th, 2021. So that is a factual finding, and the board issued its decision after February 13th, 2021. Finding that she's now 21, right? Correct, but the alternative... I understand it's not disputed. Correct, but it seems the alternative would be remanding to the IJ for the purpose of finding whether she's over 21. Yeah, I get that. Somehow this one just sticks in my craw that the IJ decides it based upon a set of facts and the BIA decides it based on a different set of facts, and the government is in some respects in control of this in terms of the timing. I mean, by here the government in the sense of the BIA's calendar, it just strikes me as that's not the way the system ought to work. Understood, Your Honor. Okay, we've taken you over. I think we have your argument. Thank you. We'll give you time for a rebuttal. No. Yeah, yeah, you've got time for a rebuttal. I'm sorry, I thought there was something else. Sorry, I said Japan. Well, just briefly regarding deference, I think the court touched upon under Loper-Bright, there's obviously no Chevron deference. At most, I think you'd look at Skidmore deference, which would be the power to persuade. If you look at the public... Right, but how would you respond to, oh, maybe you were going to go there, the 11th Circuit case? Yeah, I will apologize. What I saw cited in the government's brief, I'm not sure it's a published decision. It might be non-published. I didn't... It's published? I didn't double-check the citation. It was not published. It looks like it's just a Westlaw site, so I'm not sure that it's precedent in the 11th Circuit, but if you look at the BIA decisions regarding the, quote, continuing application argument, they only, in matter of Garcia, it's regarding continuous physical presence element, because there's obviously four elements to cancellation removal, and good moral character, which is matter of Taga Cabrera. Every BIA case and every 9th Circuit case focuses on the hardship being found at the time it's adjudicated before the immigration judge. Everybody points to that, and then the BIA somehow just kind of always says, well, they're under 21, and we're going to take it out. The BIA never... There is not a published decision that I'm aware of that says that this is correct, what they're doing. I mean, I guess to a certain degree, you know, Judge Fletcher's colloquy sort of gets into this question, because it did seem like there's something different about age than, well, I'm making a factual, you know, decision, a finding on whether she can access her medication on her own or whether she needs assistance. That just seems different than age in some way, but it's the whole concept of judicial notice. I understand the court is wrestling with it. It's the litigants wrestle with it. I think the government, to some degree, wrestles with it, too. It's not correct, I think, what's going on, and where to draw the line, obviously, from the petitioner's point of view, is to lock in the record while it's factually being made in front of the immigration judge, because anything other than that creates all these ancillary issues which are unanswered, how the BIA can just parachute in and reconsider the hardship and overrule a case, or, and I don't mean to say the government in bad faith would, but practically speaking, age is beyond everybody's control, and it just happens, but the argument then arises, and the case is dismissed on that basis. That certainly can't be what should be happening in these types of cases, and I think the court's brought up a lot of these issues that we've argued, and I think, and we'd ask that the court make a finding that that age can be locked in during this process, but not on appeal. Okay, I think we got your argument. Thank you. Thank you to both counsel in a case that turns out to be more interesting than we may have thought, so appreciate it. The case is now submitted.
judges: FLETCHER, Wallach, NELSON